## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## ALEXANDRIA DIVISION

SUSAN SCHARPF, on behalf of herself and
all others similarly situated,

     *Plaintiff*,

     v.

GENERAL DYNAMICS CORP., *et al.*,

     *Defendants*.

Case No. 1:23-cv-01372-AJT-WEF

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL END DATES FOR THE DISCOVERY PERIODS FOR DOCUMENTS AND DATA

## INTRODUCTION

Plaintiff's motion to compel "global" discovery end dates seeks to undo months of painstaking negotiations by individual Defendants regarding the scope of their document productions. It also ignores the individual circumstances and unique burdens of individual Defendants and was filed before Plaintiff had completed the meet and confer process with all Defendants. Plaintiff's motion should be denied.

Plaintiff served her initial set of discovery requests, including dozens of requests for production, over four months ago, on August 29, 2025. Consistent with the parties' ESI Protocol and the case schedule ordered by this Court, each Defendant (or corporate families of Defendants) spent the following months separately engaging in extensive negotiations with Plaintiff over appropriate custodians, search terms, production dates, and other discovery parameters and disputes.[1] These discussions, and the agreements that resulted therefrom, were individualized to account for, *inter alia*, the different sizes, resources, e-discovery systems, and data retention policies of each Defendant. By November, all Defendants had reached agreement on interim production deadlines for the agreed-upon custodial documents; this review has since progressed as expected, and all Defendants remain on track to meet both their interim deadlines and the March 2, 2026, deadline for substantial completion of document productions. Defendants' structured data productions—which have a substantial completion deadline of next Friday, January 16—were likewise bilaterally negotiated with each Defendant.

---

[1] Specifically, recognizing "the importance the Court places on cooperation and commit to cooperate in good faith," the ESI Protocol obligated the parties to, *inter alia*, "work cooperatively to fashion reasonable, precise and cost-effective search strategies;" "conduct discussions concerning e-discovery processes and technical matters through counsel and/or technical personnel;" and make otherwise "reasonable efforts to comply with and resolve any differences concerning" discovery. ECF No. 292-2 at 2.

Throughout these discussions, Plaintiff took varying positions on the relevant time period for Defendants' discovery. Ultimately, as detailed below, Plaintiff reached agreement with several Defendants on end dates for custodial documents: the GD Defendants reached a written agreement with Plaintiff to produce custodial documents through September 5, 2025, and Marinette Marine agreed to the same provided that Plaintiff also produced documents through that date; Bollinger reached a written agreement with Plaintiff on a November 6, 2023, date, and Serco agreed to do the same in an attempt to resolve the need for the instant motion; and CACI reached a written agreement with Plaintiff on an earlier, October 6, 2023, end date for custodial documents. Most other Defendants objected to Plaintiff's proposed "Relevant Time Period" and proceeded with discovery through their proposed 2023 end dates, which Plaintiff did not challenge at any point during the meet and confer, collection, or review process. Plaintiff's belated attempt to change course *months* into this process is inexcusable, and one that would materially impact the scheduling order previously set by this Court.[2]

Indeed, it was not until the beginning of the holiday period, on December 19, 2025—two days after the GD Defendants first informed Plaintiff they planned to move to compel a single custodian, plaintiff Susan Scharpf, to produce documents through the present—that Plaintiff completely reversed course, asserting, for the first time, that "global" end dates for discovery should apply to all parties. Plaintiff also repeatedly failed to respond to the efforts of many Defendants during the holiday period to meet and confer regarding Plaintiff's last-minute demand. Thus, in a rush to raise this argument with the Court on the same day that the GD Defendants filed their own motion to compel Ms. Scharpf's post-Complaint documents (the "GD MTC"), *see* ECF

---

[2]  Defendants are already under the heavy weight of a more than two-decade discovery burden dating back to January 1, 2000, even though Defendants steadfastly believe the four-year statute of limitations should have barred these stale claims.

No. 449, Plaintiff jumped the gun by filing the instant motion before satisfying the requirement to meet and confer as to all Defendants, as is required under local and federal rules.

To date, Plaintiff has failed to identify any factual or legal basis for applying this "one size fits all" approach to uniquely situated Defendants that have negotiated individualized discovery plans and are facing vastly different discovery burdens. To the contrary, Plaintiff's own arguments and conduct, described herein, only further reinforce that the proposed "global" end dates are unnecessary, inefficient, and directly contrary to the agreements Plaintiff already reached with several Defendants. Defendants therefore request that the Court reject Plaintiff's proposed "global" discovery end dates and deny Plaintiff's motion.

## FACTUAL AND PROCEDURAL BACKGROUND

As Plaintiff's motion concedes, the parties have taken different positions on Plaintiff's proposed "Relevant Time Period" for document and data discovery. Plaintiff's bilateral discussions with Defendants on this issue are at varying stages, and several different agreements have been reached.

***HII Defendants***. In their September 15, 2025, objections to Plaintiff's first set of requests for production, the HII Defendants objected to Plaintiff's proposed Relevant Time Period "as overbroad, unduly burdensome, and disproportionate to the needs of the case" and "reserve[d] the right to negotiate with Plaintiff an appropriate relevant time period" for each Request. Ex. A at 21–22. Notwithstanding this objection, the HII Defendants collected documents and data for the vast majority of this period, from January 1, 2000, through October 6, 2023, so as to offer an expansive data set for purposes of custodian and search term negotiations. Plaintiff did not even raise this objection or attempt to negotiate a different end date during at least four different meet

and confers with the HII Defendants about custodial documents. She finally did so in December 2025, only after the GD Defendants made this same request of Plaintiff.

***CACI***. CACI likewise objected to Plaintiff's alleged Relevant Time Period in its September 15, 2025 objections to Plaintiff's requests for production and has reiterated its objections to and understanding of the October 6, 2023 end date on several meet and confers with Plaintiff. In fact, Plaintiff's own motion states that, "Plaintiff made two deals by the end of October with two Defendants who specifically refused to produce documents after a certain date: Bollinger and CACI . . . As to CACI, Plaintiff ultimately accepted its proposed end date of October 6, 2023." ECF No. 456 at 3. CACI's relevant time period objections included both structured data and documents.

***Bollinger.*** Bollinger noted its disagreements with Plaintiff's purported Relevant Time Period in its September 15, 2025, objections to Plaintiff's requests for production. During an October 21, 2025, meet and confer with Plaintiff's counsel, Bollinger highlighted the burden Plaintiff's definition of Relevant Time Period would impose, as it would require Bollinger to review potentially privileged materials generated after Plaintiff filed her complaint. In an October 24, 2025, letter memorializing the meet and confer and acknowledging Bollinger's concerns, Plaintiff offered to "agree to end the Relevant Time Period at November 6, 2023, one month after the Complaint was filed." Bollinger accepted Plaintiff's offer in writing on October 29, stating: "Bollinger will apply the proposed November 6, 2023, end date, with the understanding that Bollinger's agreement to extend the relevant time period . . . does not alter or affect any privileges or protections, nor the parties' other agreements. . . ." Bollinger has since completed its search term negotiations and document collections and begun its review of documents and data.

**Thor.**  Thor also objected to Plaintiff's Proposed Relevant Time period in its September 15, 2025, objections and maintained that objection in subsequent discovery negotiations with Plaintiff, during which Plaintiff consistently sought an end date of October 6, 2023.  Prior to filing the instant motion, Plaintiff did not even respond to Thor's outreach regarding an appropriate discovery end date and made *no* effort to meet and confer with Thor in good faith.  Presently, Thor remains in active negotiations with Plaintiff on this issue.

**Serco.**  Serco likewise objected to the proposed Relevant Time Period on overbreadth grounds in its September 15, 2025 objections.  On December 2, 2025, Plaintiff emailed Serco to request, for the first time, that it produce documents through November 26, 2025 (the date of the Court's motion-to-dismiss decision).  On December 4, 2025, Serco responded, stating that it intended to produce documents through October 6, 2023.  Plaintiff only responded *after Serco's first custodial production* (on December 16, 2023), and at that point communicated that Plaintiff was "open to" an October or November 2023 end date, as long as it applied to Plaintiff.  Plaintiff informed Serco on December 31, 2025 that she intended to move to compel an end date of November 6, 2023, or alternatively September 5, 2025, for custodial documents and December 31, 2025 for structured data.  On the next business day, Serco agreed "[t]o resolve this dispute" by agreeing to produce documents and data through Plaintiff's preferred dates of November 6, 2023 for custodial documents and December 31, 2025 for structured data.

**Marinette Marine**.  Marinette Marine also objected to Plaintiff's alleged Relevant Time Period in its September 15, 2025 objections. No specific end date was agreed upon during the parties' subsequent meet and confers regarding search terms and custodians. However, when Plaintiff more recently requested Marinette Marine's position on the end date, Marinette agreed, notwithstanding legitimate burden and proportionality concerns, to produce documents through

September 5, 2025, provided that Plaintiff did the same. Marinette Marine also agreed to produce structured data through December 31, 2025.

**GD Defendants.** As detailed in Plaintiff's motion, the GD Defendants do not face the same burden and proportionality concerns as other Defendants and have accordingly agreed, following extensive negotiations, to produce custodial documents through September 5, 2025, and structured data through December 31, 2025. This motion is not, therefore brought against these Defendants.

## ARGUMENT

### I.   Plaintiff's Proposed "Global" End Dates for Documents and Structured Data Are Unnecessary, Inefficient, and Contrary to Plaintiff's Stated Position and the Parties' Agreements

As described above, Defendants emerged from meet and confers with Plaintiff months ago with the understanding they could apply several different end dates when searching for responsive data. Despite Plaintiff's prior efforts to negotiate different discovery end dates based on the individual circumstances and burdens of each Defendant, Plaintiff now asks this Court to impose a "global" end date that would apply to all parties' custodial documents and data (November 6, 2023, or, alternatively, September 5, 2025) and a different "global" end date for all parties' structured data (December 31, 2025). Plaintiff makes this request, notwithstanding that, at the time of the hearing, the Court-ordered substantial completion deadline for structured data will be a mere *seven days* away (January 16), and, for custodial documents and data, less than two months away (March 2). For several related but distinct reasons, the justification for these so-called "global" end dates are unsupported by the law and belied by Plaintiff's own conduct, statements, and agreements with Defendants.

**First** and fundamentally, Plaintiff provides no authority that supports imposing identical discovery end dates to all parties, irrespective of their prior agreements or individual circumstances and burdens. The general principle that discovery is not "a one-way street" (ECF No. 456 at 1)

does not outweigh or displace the need to show that the requested discovery is relevant and proportional as to each Defendant. To the contrary, the very authority on which Plaintiff relies makes clear that the relevant time period for discovery is a case- and circumstance-specific inquiry. *See, e.g.*, *In re Diisocyanates Antitrust Litig.*, 2020 WL 7424975, at *2 (W.D. Pa. Dec. 18, 2020) (explaining there is "no controlling bright line test for the temporal framework of jurisdictional discovery"). And, in several cases, the relevant time period for discovery ended on the date the complaint was filed—even where the plaintiff(s) alleged ongoing conduct. *See, e.g.*, *U.S. v. R&F Props. of Lake Cnty., Inc.*, 433 F.3d 1349, 1359 (11th Cir. 2005) (even though plaintiff alleged "an ongoing practice of false billing," the court found "[t]he proper temporal range for discovery is February 1997 through the date of the original complaint"); *Dalitz v. AmSurg Corp.*, 2015 WL 8717398, at *4 (E.D. Cal. Dec. 15, 2015) (finding plaintiff's factual "allegations do not warrant discovery concerning the time after August 27, 2012, the date on which the original complaint was filed").

***Second***, Plaintiff's bilateral negotiations and agreements with Defendants exemplify precisely why the "what's good for the goose is good for the gander" approach touted in Plaintiff's motion is inapposite and inefficient in this circumstance. Plaintiff had months to negotiate with Defendants over the documents and data that she now claims are necessary to her claims. Not *once* did Plaintiff propose a uniform end date for all Defendants' discovery. Instead, she did the opposite, negotiating bilateral, divergent discovery end dates with some Defendants and ignoring or delaying the issue with the remainder. And even among the Defendants with whom Plaintiff was able to reach agreement, the discovery end dates differed: while the GD Defendants agreed to

produce custodial documents through September 5, 2025, and structured data through December 31, 2025, Serco and Marinette only agreed to the latter.[3]

Most significantly, however, Plaintiff agreed—and, in the case of Bollinger, affirmatively proposed—*months* ago that CACI and Bollinger need only produce custodial documents and structured data through October 6, 2023, and November 6, 2023, respectively.   Plaintiff was clearly aware that no "global" end date for discovery had been achieved through the meet and confer process and has offered no reason why this Court should disregard the discovery time periods that were mutually agreed to following extensive negotiations and instead behold Bollinger and CACI to the end dates that Plaintiff separately negotiated with *other* Defendants.  *See Am. Chiropractic Ass'n v. Trigon Healthcare, Inc*., 367 F.3d 212, 236 (4th Cir. 2004) (finding district court did not abuse its discretion by honoring "the mutual agreement of the parties" and refusing to "expand the scope of discovery beyond that mutually agreed to"); *Health & Beauty Techs., Inc. v. Merz Pharma GmbH KGaA*, 2018 WL 6345369, at *8 (E.D.N.C. Dec. 5, 2018), *aff'd*, 2019 WL 210395 (E.D.N.C. Jan. 15, 2019) ("[I]t appears to the court that the parties engaged in a meaningful meet and confer and reached an agreement as to the custodians and search terms for electronic discovery. In accordance with their good-faith obligation to attempt to resolve discovery disputes without court action, Defendants should honor any agreement reached with Plaintiffs at the meet and confer."); *In re High Fructose Corn Syrup Antitrust Litig.*, 2000 WL 33180835, at *2 (C.D. Ill. July 19, 2000) ("This Court fully expects all parties to this action to honor their agreements and will not permit any party, absent a proper showing, to break such agreements. This, however, is precisely what Gray is attempting to do by seeking discovery for periods of time beyond the

---

[3] Marinette also agreed to produce custodial documents through September 5, 2025 if Plaintiff did the same.

period specified in its agreement with Class Defendants, and it has failed to make a showing as to why this Court should not honor the parties' agreement.").

More generally, Defendants' unique proportionality, burden, resource, and timing concerns that informed these negotiations exemplify why identical end dates for all Defendants' discovery is unnecessary and likely impossible to implement for some Defendants at this late hour. Indeed, these bilateral, Defendant-specific discovery negotiations and agreements, which occurred months ago, are the precise reason *why* Defendants are currently on track to produce all *agreed upon* documents and data in compliance with existing Court-ordered discovery deadlines. In this sense, Plaintiff's motion evokes a feeling of déjà vu: only a few weeks ago, during the November 7, 2025, hearing, this Court rejected a similar attempt by Plaintiff to prematurely inject rigid, unform deadlines for Defendants' rolling document productions, reasoning that the parties were capable of individually negotiating appropriate and reasonable deadlines based on the needs and circumstances of each Defendant. As correctly predicted, following this decision, each Defendant successfully negotiated its own interim document production deadlines, without the need for additional intervention by the Court. Plaintiff offers no reason, and Defendants see none, why the parties cannot do the same for Defendants' discovery end dates.

**Finally**, Plaintiff's own framing of her desired relief further undermines the need for a "one size fits all" approach to discovery end dates. Most obviously, Plaintiff proposes two different "global" end dates for custodial documents and structured data—a tacit admission that the appropriate time period for discovery necessarily varies based on the size, scope, type, and burdens of producing the discovery requested. Similarly, Plaintiff's principal request is for a Court order imposing an end date of *November 2023* for all parties' custodial documents; it is only in the "alternative" that she seeks to compel production of documents through September 2025.

In so arguing, Plaintiff effectively concedes that her primary objective in filing the instant motion is *not* to compel production of important documents that Defendants are refusing to produce. Rather, her goal is to obtain relief from the GD Defendants' motion to compel *Plaintiff* to produce documents through the present. Indeed, Plaintiff did not even mention the idea of "universal" discovery deadlines until after the GD Defendants sought documents from a single additional custodian through the present. Because neither the law nor the circumstances of this case justify the "eye for an eye" approach propounded by Plaintiff, her request for "global" discovery end dates should be denied.

## II.    Plaintiff's Motion is a Premature and Improper Opposition Brief

In this Court, as in most, a motion to compel cannot be filed until a "good faith effort has been made between counsel to resolve the discovery matters at issue" in meet and confers, without court intervention. *See* Fed. R. Civ. P. 37(a)(1); Local Civ. R. 37(E). After being notified of the instant motion, multiple Defendants separately notified Plaintiff that this motion was premature and improper given Plaintiffs' failure to meet and confer with them, including CACI, Serco, Bollinger, Marinette Marine, Thor, and the HII Defendants.[4] Plaintiff, too, has indicated she

---

[4] Ex. B (Jan 2, 2026, email from J. Rogowski to B. Johnson) ("CACI has not individually met and conferred with Plaintiff on Plaintiff's proposal to extend CACI's relevant time period for discovery past October 6, 2023, and the additional burden such an extension would pose on CACI's ongoing discovery efforts, which are well underway. CACI has continually asserted in its responses and objections to Plaintiff's Requests for Production and Interrogatories, and on several meet and confers, that the relevant time period for CACI would end on October 6, 2023. Plaintiff did not voice any opposition to this relevant time period until its joint meet and confer regarding a separate motion on December 19, after which counsel for CACI understood that Plaintiff was amenable to meeting and conferring with Defendants on an individual basis to discuss this precise issue. The issue of post-Complaint discovery has not been fully fleshed out on an individual basis between CACI and Plaintiff."); Ex. C (Jan 2, 2026 email from J. Wade to B. Johnson) ("To resolve this dispute, Serco is willing to agree to produce unstructured data through November 6, 2023, and structured data through December 31, 2025. As we are agreeing to the dates that you appear to be requesting from the Court, we do not believe a motion to compel is necessary or appropriate against Serco."). Ex. D (Jan. 2, 2026 email from K. Swendsboe to B. Johnson) ("It is premature at best to declare an impasse and file a motion, because, at least with respect to Bollinger, there has been no

remains "willing to meet and confer regarding any burden objections specific to any particular Defendant."  ECF No. 456 at 13.  Plaintiff has thus failed to comply with this foundational requirement as to the several Defendants that are *not* at an impasse on the issues on which Plaintiff now seeks Court intervention.  Plaintiff did not make the required good faith effort to resolve this issue before filing the instant motion, nor has there been a lack of cooperation on the part of any, let alone all, Defendants named in this motion.

Relatedly, there is no live dispute for the court to adjudicate on this motion while the GD MTC remains pending and the parties continue to meet and confer on this issue.  As noted, the questions raised in the GD MTC and the current motion are inherently intertwined, and their

---

meet-and-confer, and we would need an opportunity to discuss with our client following a meet-and-confer . . . If Plaintiff now seeks to renege on the agreement reached with Bollinger months ago, a meet-and-confer must be held before such motion is filed, as we want to hear with clarity how Plaintiff could justify reneging on an agreement it proposed."); Ex. E (Jan. 2, 2026 email from S. Bosack to B. Johnson) ("As you know, Marinette Marine has already agreed  to produce unstructured data through September 5, 2025, provided Plaintiff does the same.  Marinette also agrees to produce structured data through December 31, 2025.  Accordingly, it is neither necessary nor appropriate for Plaintiff to seek to compel such documents from Marinette."). Marinette and Plaintiff subsequently met and conferred on January 6, 2026, only *after* Plaintiff's Motion to Compel was filed. Marinette and Plaintiff agree that the same end date should apply to those two parties but disagree on whether the proper end date is September 5, 2025 (as Marinette contends) or October or November 2023 (as Plaintiff contends). Marinette takes no position on the proper end date for any other Defendant, given the circumstances of individual Defendants may differ; Ex. F (Jan. 4, 2026 email from A. Dunn to B. Johnson) ("Regarding the end date of October 6, 2023, in the attached email, in response to my question to you and George asking whether Plaintiff was all of the sudden changing its position with respect to the time period for Thor's document production, George (who I have been working closely with over the past few weeks on an arrangement for Thor's document production) apologized for the confusion and promised to get back to me promptly.  I have not from George since he sent that email – not regarding the time period issue or regarding the arrangement we have been working on for Thor's document production.  Regarding Plaintiff's good faith effort to resolve the matter at issue in Plaintiff's motion with Thor, neither you nor George has responded to my email below."); Ex. G (Dec. 31, 2025 email from T. Stenerson to B. Johnson) (as to HII Defendants, "plaintiff has it exactly backwards—parties are required by rule and professional courtesy to thoroughly discuss discovery disputes in an effort to eliminate (or at least narrow as much as practicable) disagreements **before** filing motions that burden the Court.  Your email admits that hasn't occurred yet . . .").

requested relief is directly at odds: if granted, the GD MTC—which, unlike Plaintiff's, is procedurally proper and timely—would compel Plaintiff, a single individual, to produce documents and data through the present, while the current motion primarily seeks a November 6, 2023 end date for all parties' document productions.

On this basis alone, Plaintiff's improper and premature motion to compel should be denied in its entirety. *See, e.g.*, *Curtis v. Deutsche Bank*, 2025 WL 1296206, at *15 (E.D. Mich. May 5, 2025) (finding plaintiffs failed to make good faith efforts to resolve dispute and denying motion to compel for lack of Rule 37 certification); *Voss v. Tahoe Forest Hosp. Dist.*, 2025 WL 1684220, at *3 (E.D. Cal. June 16, 2025) (denying plaintiff's motion to compel on ripeness grounds where "the parties did not sufficiently meet and confer," leaving the "issue[s] still in dispute" as between the parties).

### III.   Plaintiff's Proposed 2025 Discovery End Dates Are Unduly Burdensome and Would Delay the Current Discovery Schedule

Even if considered on its merits, Plaintiff's requests at this late stage to compel all Defendants to produce (1) custodial documents through November 6, 2023, or, alternatively, September 5, 2025, and (2) structured data through December 31, 2025, should be categorically rejected as disproportionate and unduly burdensome.  Under Rule 26(b)(1), discoverable matter must be both relevant and "proportional to the needs of the case"—which are related but distinct requirements. In assessing proportionality, the Court must consider: "[1] the importance of the issues at stake in the action, [2] the amount in controversy, [3] the parties' relative access to relevant information, [4] the parties' resources, [5] the importance of the discovery in resolving the issues, and [6] whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).

Here, as mentioned, Defendants need not contest the potential relevance of their custodial documents and structured data that post-dates the filing of the Complaint. The issue is that, for many Defendants that have already expended enormous resources and efforts on discovery in this matter (and agreed to expend a great many more), Plaintiff's broad requests for this discovery are not proportional: the burdens and expenses of collecting, reviewing, and producing the additional data and documents easily outweighs any potential benefits.

Most parties spent months negotiating custodians and search terms to obtain hit counts that were reasonable, proportional, and feasible to review and produce on the existing case schedule. This process—which was slowed and complicated by Plaintiff's initial, vastly overbroad set of search terms—was painstaking. In short, most Defendants (1) ran Plaintiff's many hundreds of search terms across their custodial documents (after breaking up the search term into over 1,000 individual queries to be manageable by their e-discovery systems); (2) obtained hit counts for those search terms; (3) met and conferred with Plaintiff on those hit counts and agreed to adjusted search terms; then started back at step (1) for each adjusted search term. Defendants went through as many as 11 adjusted search term proposals, attended as many as five meet and confers, and engaged in countless additional written correspondence in an effort to identify a robust but proportionate set of documents for Defendants to review. Adding in two years' worth of data now for these same custodians and search terms would throw a wrench into many Defendants' carefully negotiated document collection and review plans, significantly increasing the burdens, costs, and time required to produce and jeopardizing the current schedule.

Accordingly, many Defendants' continued objections on the basis of undue burden remain well-founded. The HII Defendants, for instance, have agreed to run 233 independent search strings across 42 total custodians through October 6, 2023, the date the complaint was filed. All told, the

HII Defendants have collected and expect to review well over 1 million documents, including over 400,000 documents with actual or potential controlled unclassified information that requires special review and handling.  Only some of the 42 custodians' documents from after October 6, 2023, have been collected, this collection has not occurred in a comprehensive fashion, and these documents were not included in the hit counts on which the HII Defendants' final search term agreement with Plaintiff was based.  And even within the limited set of recent documents that have already been collected, the hit counts are enormous:  when limited to the October 6, 2023–present timeframe, the 233 agreed-upon search terms result in over 790,000 additional hits.  In short, if required to produce documents and data through 2025, the HII Defendants would be obligated to collect and review well over 1 million more documents, potentially doubling their associated burdens and expenses well beyond what was contemplated when they met and conferred with Plaintiff months ago.  The benefits of any such discovery to Plaintiff, in contrast, are correspondingly negligible.  And Plaintiff does not even attempt to argue why the GD Defendants' request for what is likely a handful of documents from a single custodian somehow justifies this enormous, additional burden on the HII Defendants and others.

Furthermore, requiring all Defendants to produce documents and data through the proposed 2025 dates would delay the current discovery schedule and create other inefficiencies that inevitably arise when differently situated Defendants are subject to identical discovery obligations. Defendants like CACI and Bollinger, relying on the agreements reached with Plaintiff, have not collected or reviewed the past two years' worth of documents or data and thus would be unable to produce the additional discovery in full by the current substantial completion deadline.  This likely means Plaintiff thinks depositions should, too, need to be pushed back by several months until custodial productions are complete.  To the extent Plaintiff is willing to agree to 2023 dates for all

parties or to proceed with depositions on partial custodial productions, such a position further underscores that Plaintiff does not actually need these documents and is merely trying to persuade the Court to deny the GD MTC.

For this reason and those discussed above, Plaintiff's proposed "universal" discovery end dates are at best premature, but certainly inefficient and unnecessary. The instant motion should be denied.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's motion to compel in its entirety.

Dated: January 7, 2026

Respectfully submitted,

/s/ Adam Block Schwartz
Adam Block Schwartz (VSB No. 75396)
Todd Stenerson (*pro hac vice*)
Joseph Paul Samuels (VSB No. 92494)
ALLEN OVERY SHEARMAN
STERLING US LLP
1101 New York Avenue, NW
Washington, DC 20005
Tel: (202) 508-8000
adam.schwartz@aoshearman.com
todd.stenerson@aoshearman.com
joseph.samuels@aoshearman.com

Robbie Rogart Jost (VSB No. 84377)
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004
Tel: (202) 624-2500
rjost@crowell.com

Sima Namiri-Kalantari (*pro hac vice*)
CROWELL & MORING LLP
515 South Flower Street, 40th Floor
Los Angeles, CA 90071
Tel: (213) 622-4750
snamiri@crowell.com

Chahira Solh (*pro hac vice*)
CROWELL & MORING LLP
3 Park Plaza, 20th Floor
Irvine, CA 92614
Tel: (949) 263-8400
csolh@crowell.com

*Counsel for Defendants Huntington Ingalls Industries, Inc., HII Fleet Support Group LLC, HII Mission Technologies Corp., Ingalls Shipbuilding, Inc., and Newport News Shipbuilding and Dry Dock Co.*


/s/ Brian Andrew Hill
Brian Andrew Hill
Brian J. Whittaker (VSB No. 79204)
NIXON PEABODY LLP
799 9th Street NW, Suite 500
Washington, DC 20000
Tel: (202) 585-8000
bhill@nixonpeabody.com
bwhittaker@nixonpeabody.com

Allison W. Reimann (*pro hac vice*)
GODFREY & KAHN, S.C.
One East Main Street, Suite 500
Madison, WI 53703
Tel: (608) 257-3911
areimann@gklaw.com

Sean O'D. Bosack (*pro hac vice*)
Christie B. Carrino (*pro hac vice*)
GODFREY & KAHN, S.C.
833 East Michigan Street, Suite 1800
Milwaukee, WI 53202
Tel: (414) 273-3500
sbosack@gklaw.com
ccarrino@gklaw.com

*Counsel for Defendant Marinette Marine Corp.*


/s/ Attison L. Barnes, III
Attison L. Barnes, III (VSB No. 30458)
Krystal B. Swendsboe (VSB No. 89614)
Scott M. McCaleb (*pro hac vice*)
Jon W. Burd (*pro hac vice*)
Daniel T. Park (*pro hac vice*)

WILEY REIN LLP
2050 M Street, NW
Washington, DC 20036
Tel: (202) 719-7000
abarnes@wiley.law
kswendsboe@wiley.law
smccaleb@wiley.law
jburd@wiley.law
dpark@wiley.law

*Counsel for Defendant Bollinger Shipyards, LLC*


/s/ Benjamin L. Hatch
Benjamin L. Hatch (VSB No. 70116)
Casey Erin Lucier (VSB No. 80363)
MCGUIREWOODS LLP
888 16th Street, NW
Washington, DC 20006
Tel: (202) 857-1700
bhatch@mcguirewoods.com
clucier@mcguirewoods.com

J. Brent Justus (VSB No. 45525)
Nicholas J. Giles (VSB No. 85684)
Joshua D. Wade (VSB No. 92588)
W. Cole Geddy (VSB No. 93511)
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
Tel: (804) 775-1018
bjustus@mcguirewoods.com
ngiles@mcguirewoods.com
jwade@mcguirewoods.com
cgeddy@mcguirewoods.com

*Counsel for Defendant Serco, Inc.*


/s/ Christopher C. Brewer
Christopher C. Brewer (VSB No. 93406)
Ryan P. Phair (*pro hac vice*)
Michael F. Murray (*pro hac vice*)
Craig Y. Lee (*pro hac vice*)
PAUL HASTINGS LLP

2050 M Street NW
Washington, DC 20036
Tel: (202) 551-1700
chrisbrewer@paulhastings.com
ryanphair@paulhastings.com
michaelmurray@paulhastings.com
craiglee@paulhastings.com

*Counsel for Defendant CACI International Inc*


/s/ William T. DeVinney
William T. DeVinney (VSB No. 94032)
WILLIAM DEVINNEY PLLC
2221 Benedictine Court
Vienna, VA 22182
Tel: (703) 489-0587
wdevinney@wtd-law.com

*Counsel for Defendant The Columbia Group, Inc.*


/s/ Matthew J. MacLean
Matthew J. MacLean (VSB No. 44304)
Alvin Dunn (*pro hac vice*)
PILLSBURY WINTHROP SHAW PITTMAN LLP
1200 Seventeenth Street, NW
Washington, DC 20036
Tel: (202) 663-8183
matthew.maclean@pillsburylaw.com
alvin.dunn@pillsburylaw.com

*Counsel for Defendant Thor Solutions, LLC*


/s/ William Lawler
William Lawler (*pro hac vice*)
Amanda DeLaPerriere (VSB No. 95758)
BLANK ROME LLP
1825 Eye Street, NW
Washington, DC 20006
Tel: (202) 420-2249
william.lawler@blankrome.com

*Counsel for Defendant Tridentis, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 7th day of January, 2026, I will electronically file the foregoing

with the Clerk of Court using the CM/ECF system, which will then send notification of such (NEF)

to the following:

Steven J. Toll
Brent W. Johnson
Robert W. Cobbs
Alison S. Deich
Zachary R. Glubiak
Cohen Milstein Sellers & Toll PLLC
1100 New York Avenue, NW, Suite 500
Washington, DC 20005
Tel: (202) 408-4600
stoll@cohenmilstein.com
bjohnson@cohenmilstein.com
rcobbs@cohenmilstein.com
adeich@cohenmilstein.com
zglubiak@cohenmilstein.com

Shana E. Scarlett
Rio S. Pierce
Hagens Berman Sobol Shapiro LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Tel: (510) 725-3000
shanas@hbsslaw.com
riop@hbsslaw.com

Steve W. Berman
Hagens Berman Sobol Shapiro LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Tel: (206) 623-7292
steve@hbsslaw.com

Elaine T. Byszewski
Hagens Berman Sobol Shapiro LLP
301 North Lake Avenue, Suite 920
Pasadena, CA 91101
Tel: (213) 330-7150
elaine@hbsslaw.com

George F. Farah
Rebecca P. Chang
Nicholas Jackson
Handley Farah & Anderson PLLC
33 Irving Place
New York, NY 10003
Tel: (212) 477-8090
gfarah@hfajustice.com
rchang@hfajustice.com
njackson@hfajustice.com

William H. Anderson
Handley Farah & Anderson PLLC
5353 Manhattan Circle, Suite 204
Boulder, CO 80303
Tel: (202) 559-2433
wanderson@hfajustice.com

Simon Wiener
Handley Farah & Anderson PLLC
68 Harrison Avenue, Suite 604
Boston, MA 02111
Tel: (202) 921-4567
swiener@hfajustice.com

*Counsel for Plaintiff and the Proposed Class*

Candice J. Enders
Julia R. McGrath
Berger Montague PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
cenders@bm.net
jmcgrath@bm.net

Brian D. Clark
Stephen J. Teti
Arielle S. Wagner
Eura Chang
Lockridge Grindal Nauen P.L.L.P
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Tel: (612) 339-6900
bdclark@locklaw.com
sjteti@locklaw.com

aswagner@locklaw.com
echang@lawlaw.com

*Additional Counsel for Plaintiff and the Proposed Class*


/s/ Adam Block Schwartz
Adam Block Schwartz