**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| SUSAN SCHARPF and HENRY FORSTER on behalf of themselves and all others similarly situated,<br><br>*Plaintiffs*,<br>v.<br><br>GENERAL DYNAMICS CORP., *et al.*<br><br>*Defendants*. | Case No. 1:23-cv-01372-AJT-WEF |

**DECLARATION OF BRENT W. JOHNSON IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT WITH GIBBS & COX, INC., MARINETTE MARINE CORP., SERCO, INC., CACI INTERNATIONAL INC., THOR SOLUTIONS, LLC, BOLLINGER SHIPYARDS, LLC, AND HUNTINGTON INGALLS INDUSTRIES, INC., CERTIFICATION OF SETTLEMENT CLASS, AND APPOINTMENT OF SETTLEMENT CLASS COUNSEL**

I, Brent W. Jonhson, state under oath, as follows:

1. I am a partner at Cohen Milstein Sellers & Toll PLLC. I am admitted to this Court *pro hac vice* and am one of the Interim Co-Lead Counsel appointed by the Court to represent the proposed class in this litigation. *See* ECF 161.

2. Based on personal knowledge or discussions with Interim Co-Lead Counsel of the matters stated herein, if called upon, I could and would competently testify thereto.

3. I specialize in antitrust class action law and have prosecuted numerous antitrust class actions as lead counsel or co-lead counsel. I have negotiated many settlements during my years of practice. I previously submitted my firm's and my credentials in Plaintiffs' Unopposed Motion for Appointment of Interim Co-Lead Counsel. *See* Dkt. No. 159.

4. I submit this Declaration in support of Plaintiffs' Motion for Preliminary Approval of Settlement with Gibbs & Cox, Inc. ("Gibbs"), Marinette Marine Corp. ("Marinette"), Serco,

Inc. ("Serco"), CACI International Inc. ("CACI"), Thor Solutions, LLC ("Thor"), Bollinger Shipyards, LLC ("Bollinger"), and Huntington Ingalls Industries, Inc., ("HII") (collectively hereafter, "Settlement Defendants" or "Settlement Agreements"), Certification of Settlement Classes, and Appointment of Settlement Class Counsel.

5. On behalf of Plaintiffs, other Co-Lead Interim Counsel and I personally conducted intensive settlement negotiations with counsel for Settlement Defendants over the course of several months.

a. Plaintiffs and Gibbs executed a Settlement Agreement on January 30, 2026. Attached as **Exhibit A** is a true and accurate copy of this Settlement Agreement between Plaintiffs and Gibbs.

b. Plaintiffs and Marinette executed a Settlement Agreement on May 7, 2026. Attached as **Exhibit B** is a true and accurate copy of this Settlement Agreement between Plaintiffs and Marinette.

c. Plaintiffs and Serco executed a Settlement Agreement on March 27, 2026. Attached as **Exhibit C** is a true and accurate copy of this Settlement Agreement between Plaintiffs and Serco.

d. Plaintiffs and CACI executed a Settlement Agreement on May 27, 2026. Attached as **Exhibit D** is a true and accurate copy of this Settlement Agreement between Plaintiffs and CACI.

e. Plaintiffs and Thor executed a Settlement Agreement on May 28, 2026. Attached as **Exhibit E** is a true and accurate copy of this Settlement Agreement between Plaintiffs and Thor.

f. Plaintiffs and Bollinger executed a Settlement Agreement on May 26, 2026. Attached as **Exhibit F** is a true and accurate copy of this Settlement Agreement between Plaintiffs and Bollinger.

g. Plaintiffs and HII executed a Settlement Agreement on June 8, 2026. Attached as **Exhibit G** is a true and accurate copy of this Settlement Agreement between Plaintiffs and HII.

7. In my opinion, and in that of highly experienced Interim Co-Lead Counsel, the proposed Settlement Agreements are fair, reasonable, and adequate. They provide substantial monetary and non-monetary benefits to the Settlement Class, and they avoid the risks, costs, and delay of continuing protracted litigation against Settlement Defendants.

8. In the Settlement Agreement with Gibbs, Gibbs commits to provide payment of $2,500,000, (two million five-hundred thousand U.S. dollars) into a settlement fund within thirty (30) days of preliminary approval of the Settlement Agreement or the date on which Gibbs is provided with wiring information for the settlement fund following preliminary approval. In the Settlement Agreement with Marinette, Marinette commits to provide payment of $1,075,000 (one million seventy-five thousand U.S. dollars) into a settlement fund within thirty (30) days following preliminary approval of the Settlement Agreement. In the Settlement Agreement with Serco, Serco commits to provide payment of $925,000 (nine hundred twenty-five thousand U.S. dollars) into a settlement fund within thirty (30) days following preliminary approval of the Settlement Agreement. In the Settlement Agreement with CACI, CACI commits to provide payment of $750,000 (seven hundred fifty thousand U.S. dollars) into a settlement fund within thirty (30) days following preliminary approval of the Settlement Agreement. In the Settlement Agreement with Thor, Thor commits to provide payment of $100,000 (one hundred thousand U.S. dollars) into a

settlement fund within thirty (30) days following preliminary approval of the Settlement Agreement. In the Settlement Agreement with Bollinger, Bollinger commits to provide payment of $75,000 (seventy-five thousand U.S. dollars) into a settlement fund within thirty (30) days following preliminary approval of the Settlement Agreement. In the Settlement Agreement with HII, HII commits to provide payment of $2,750,000 (two million seven hundred fifty thousand U.S. dollars) into a settlement fund. HII commits to pay 25% of the settlement amount within thirty (30) days following preliminary approval of the Settlement Agreement. HII then commits to pay the remaining 75% of the settlement amount within thirty (30) days following the final approval of the settlement agreement.

9. All Settlement Defendants also agree in their respective Settlement Agreements to cooperate with Plaintiffs by providing certain discovery. This cooperation ranges from document production, deposition of current or former employees, assistance authenticating documents, and answering questions about structured data.

10. The Settlement Agreements with each Settlement Defendant were the product of confidential, arm's-length negotiations. The negotiations between Plaintiffs and Settlement Defendants occurred over months and involved multiple phone calls and written exchanges. Settlement Defendants and Plaintiffs negotiated over the details of the Settlement Agreements, including the scope and components of Settlement Defendants' required cooperation. The parties exchanged multiple proposals and drafts prior to executing the Settlement Agreements.

11. There was no collusion or preference among counsel for the parties at any time during these settlement negotiations. To the contrary, the negotiations were contentious and fully informed. Plaintiffs sought to obtain an adequate sum for recovery and helpful cooperation from the Settlement Defendants.

12. When the Settlement Agreements were executed, Interim Co-Lead Counsel was fully aware of the strengths and weaknesses of each side's positions. As the Court is aware, even before filing this case in October 2023, Interim Co-Lead Counsel expended considerable time and resources to conduct an investigation into collaboration among shipbuilders and shipbuilding consultancies. To that end, Interim Co-Lead Counsel conducted interviews of former employees and others with personal knowledge of the events that gave rise to Plaintiffs' claims. Additionally, Plaintiffs were informed about the strengths and weaknesses of each side's positions from discussions with Settlement Defendants' counsel and the information Plaintiffs received from discovery. Based on the factual information obtained from the extensive pre-filing investigation and discovery, Interim Co-Lead Counsel were well informed of the value and consequences of the Settlement Agreements at the time of their executions.

13. Since September 2025, discovery has proceeded apace. Defendants produced hundreds of thousands of pages of documents. Over twenty (20) non-parties were subpoenaed for documents and testimony. And eight (8) witnesses were deposed before the final settlements were reached. The parties engaged in intensive written discovery, with defendants serving eighty-five (85) interrogatories on the plaintiffs and fifty-four (54) requests for production. In turn, plaintiffs served six (6) interrogatories on defendants and thirty-two (32) requests for production.

14. No matter how confident Interim Co-Lead Counsel are in this case, complex antitrust class actions are risky pieces of litigation. A plaintiff can never be entirely assured of a finding of liability by a jury. In the opinion of Interim Co-Lead Counsel, these Settlement Agreements represent a significant benefit to the class.

15. Plaintiffs request that the Court agree to defer formal notice of the Settlement Agreement to the Settlement Class for a few short weeks so that Interim Co-Lead Counsel can select a claims administrator and draft notices for the class.

I certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge. Executed this June 11, 2026 in Washington, District of Columbia.

*/s/ Brent W. Johnson*
BRENT W. JOHNSON